

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RANDAL JEROME DALAVAI,

Plaintiff,

v.

AMAZON.COM, INC.; AMAZON WEB SERVICES, INC.; AMAZON.COM SERVICES LLC,

Defendants.

Case No.: 25-CV-1841 JLS (AHG)

**ORDER GRANTING IN PART MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

(ECF No. 14)

Presently before the Court is Defendants Amazon.com, Inc.'s, Amazon Web Services, Inc.'s, and Amazon.com Services LLC's ("Defendants" or "Amazon") Motion to Dismiss Plaintiff's First Amended Complaint ("Mot.," ECF No. 14). Also before the Court are Plaintiff Randal Jerome Dalavai's Opposition to Defendants' Motion to Dismiss ("Opp'n," ECF No. 17) and Defendants' Reply ("Reply," ECF No. 20). Having considered Plaintiff's First Amended Complaint ("FAC," ECF No. 10), Defendants' Motion, and the law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND**.

/ / /

/ / /

/ / /

/ / /

1

## BACKGROUND

Plaintiff Randal Jerome Dalavai, a resident of California proceeding pro se, brought this action challenging allegedly unlawful provisions of Amazon's Global Restricted Stock Unit ("RSU") Award Agreement (the "Agreement"). FAC ¶ 1. In March 2020, Plaintiff was hired by Defendant Amazon Web Services, Inc. as an Apprentice Enterprise Account Engineer, and in June 2021, he became a full-time employee. *Id.* ¶ 19. On April 4, 2024, Plaintiff was awarded 162 RSUs. *Id.* ¶ 19. Under the Agreement, 74 shares would vest on May 15, 2024, and November 15, 2024, and 7 shares would vest on May 15, 2025, and November 15, 2025. *Id.* ¶ 22. The Agreement permitted the cancellation of unvested shares if an employee was no longer "actively providing services" and the "suspension of vesting during any leave unless continuous vesting [was] 'required by applicable laws.'" *Id.* The Agreement designated King County, Washington, as the exclusive venue for disputes over the Agreement. *Id.*

In March 2023, prior to the award of RSUs, Plaintiff took paid time off and notified his manager of health issues. *Id.* ¶ 27. On April 5, 2023, his manager conducted a performance meeting, and on April 6, 2023, his manager emailed a summary of the meeting, communicating concerns about Plaintiff's "ownership" over his work. *Id.* Plaintiff's manager subsequently initiated a "coaching plan," which required Plaintiff to "meet specific performance metrics, complete defined tasks within set deadlines, and demonstrate particular behavioral expectations." *Id.* ¶ 28. In May 2023, Plaintiff took approved medical leave. *Id.* The coaching plan remained open during that leave. *Id.* In May 2024, Plaintiff return to work and requested accommodations on account of his "health limitations." *Id.* ¶ 29. Plaintiff submits that the coaching plan "required deliverables and availability that exceeded Plaintiff's physician-directed six-hour schedule, and proceeding without accommodations would risk relapse and unsafe working

conditions."[1]  *Id.*  On July 12, 2024, Plaintiff emailed his Human Resources ("HR") partner and his manager, raising concerns about his requested accommodations, and noting that "the process . . . established by Amazon did not allow [him] to evaluate the proper accommodation required for [his] health and safety adequately, and that changes were needed to ensure compliance with legal precedents and regulations."  *Id.* ¶ 30 (internal quotation marks omitted).  Plaintiff also emailed HR and his manager "invoking statutory rights to representation for the purpose of negotiating the terms and conditions of employment and requesting that all future employment discussions on legal or financial matters be routed through his counsel."  *Id.* ¶ 31.  On August 13, 2024, Plaintiff again emailed HR and his manager raising concerns about his requested accommodations.  *Id.* ¶ 32.  The next day, Plaintiff emailed his manager, stating that he declined to continue with the coaching plan since he believed it violated federal and state regulations.  *Id.* ¶ 33.

Amazon issued a formal Performance Improvement Plan ("PIP") on August 27, 2024, due to Plaintiff's "failure to demonstrate ownership" over his work.  *Id.* ¶ 34.  The next day, Plaintiff began an ADA-approved medical leave.  *Id.* ¶ 35.  Plaintiff returned from leave on August 15, 2025, and requested unpaid personal leave because the unresolved PIP, accommodations request, and employment status disputes "continue[d] to jeopardize his RSU rights . . . ."  *Id.* ¶ 36.  Plaintiff alleges that an unresolved PIP "directly threaten[s] [his] ability to retain and timely receive his awarded equity."  *Id.* ¶ 34.  Amazon denied him personal leave.  *Id.* ¶ 36.  Plaintiff asserts that Amazon's conduct "makes continued service untenable and operates as a present refusal to perform in good faith under the RSU Agreement, creating an ongoing and concrete controversy over Plaintiff's contractual and statutory rights."  *Id.*

/ / /

/ / /

---

[1] Plaintiff further submits that his request for accommodations is under review by the California Civil Rights Department ("CRD").  Compl. ¶ 29.

25-CV-1841 JLS (AHG)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent

with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**DISCUSSION**

Defendants generally argue that Plaintiff fails to allege sufficient facts to support his claims. *See* Mot. at 3–10. Defendants also argue that Plaintiff's addition of Amazon.com, Inc. and Amazon.com Services LLC as defendants is improper since they do not employ Plaintiff. *Id.* at 11. The Court addresses each argument in turn.

## I.    Invalid Forum-Selection Clause

Defendants first argue that Plaintiff fails to plead sufficient facts to support his claim for declaratory relief invalidating the forum-selection clause of the Agreement, which requires adjudication of disputes about the Agreement in King County, Washington. Mot. at 4. Plaintiff seeks a declaratory judgment that the forum-selection clause "is void and unenforceable under California Labor Code § 925" and that the Parties' dispute "shall be adjudicated in California and governed by California law . . . ." FAC ¶ 51. Defendants contend that to invalidate a forum-selection clause under § 925, a plaintiff must show that, as a condition of employment, they were required to agree to adjudicate outside of California a claim arising in California, and here, the Agreement is not an employment agreement, but instead "a grant of equity that constitutes supplemental compensation without any bearing on whether Plaintiff remained employed." Mot. at 4–5. Defendants further suggest that there is no actual controversy as to the forum-selection clause since they have not sought to transfer venue to Washington State. *Id.* at 5.

The Court agrees with Defendants. California Labor Code § 925 provides in part:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
> (1) Require the employee to adjudicate outside of California a claim arising in California.
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
> (b) Any provision of a contract that violates subdivision (a) is voidable

5

by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Cal. Lab. Code § 925. Here, Plaintiff "primarily resides and works in California," and the Agreement requires the adjudication of disputes in King County, Washington. *See* FAC ¶¶ 4, 22. However, Plaintiff "has not provided the Court with any information that supports or suggests that Plaintiff was required to" sign the Agreement to "remain employed with [Amazon]." *Patel v. SAP Am., Inc.*, No. 25-CV-00608-NW, 2025 WL 1810011, at *3 (N.D. Cal. July 1, 2025); *see also Montoya v. Ariba Inc.*, No. 22-CV-1861-FWS-JDE, 2023 WL 2368701, *8–9 (C.D. Cal. Mar. 6, 2023) (finding that a forum-selection provision in a "voluntary incentive plan" agreement was not a "condition of employment"). Instead, the Agreement is related to a "[p]erformance-based equity grant," awarding Plaintiff RSUs for his performance during the previous year. FAC ¶¶ 20–21. Plaintiff attempts to argue that the Agreement's requirement of continuous employment for the RSUs to vest constitutes a "condition of employment" under § 925. Opp'n at 1–2. The consequence of failing to sign the Agreement, however, would not be losing his job— but rather losing out on the award of equity. Plaintiff's acquiescence to adjudication in Washington was therefore not a "condition of employment," and does not violate § 925. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Cause of Action.

## II.    Unlawful Forfeiture and Leave Penalties

Defendants next argue that Plaintiff's reliance on California Civil Code § 1668 to support his claim that the Agreement's allowance of forfeiture of RSUs upon termination of employment or the delay of vesting during leaves of absence is "misplaced," and that Amazon has not otherwise sought to cancel the vesting of Plaintiff's pending RSUs. Mot. at 5–6. Plaintiff responds that he challenges the portion of the Agreement providing for the forfeiture of pending RSUs upon termination of employment, "regardless of the reason for such termination and whether or not later found to be invalid or in breach of

25-CV-1841 JLS (AHG)

employment laws," FAC ¶ 53, which Plaintiff contends is an "an exculpatory design barred by Civ. Code § 1668," Opp'n at 4. Defendants reject this argument, as the provision "does not attempt to immunize Amazon from the consequences of wrongfully terminating an employee," but instead "provides that an employee will not continue to vest stock after their employment has ended." Reply at 4.

The Court finds that the Agreement does not violate California Civil Code § 1668. California Civil Code § 1668 provides that: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668. Neither Plaintiff nor Defendants point to any cases considering whether an agreement with a similar provision violates § 1668. *See* Opp'n 4–6; Reply at 3–4 (noting that Plaintiff has not cited helpful case law—while also neglecting to cite any cases). Nevertheless, the Court finds that the language Plaintiff challenges, *see* FAC ¶ 53, does not purport to exempt Amazon from responsibility for terminating an employee "in breach of employment laws," *see id.* Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Second Cause of Action.

**III.    Retaliation via Constructive Discharge**

Defendants contend that Plaintiff fails to plead sufficient facts showing that the issuance of the August 2024 PIP amounted to retaliation and that any potential termination constitutes "constructive discharge." Mot. at 6; Reply at 4. According to Plaintiff, the issuance of the PIP following Plaintiff's complaints about workplace conditions, as well as the denial of his request for personal leave and his unresolved accommodations requests, amounts to retaliation under California Labor Code § 6310. FAC ¶ 66. Plaintiff further argues that any termination that may follow his refusal "to work under those conditions" constitutes "constructive discharge." *Id.* Defendants argue that even if the PIP was retaliatory, that alone would not support a claim for constructive discharge. Reply at 4.

25-CV-1841 JLS (AHG)

The Court finds that Plaintiff has failed to state a claim for constructive discharge.[2] "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244–45 (1994). "Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will, and, as a result, a constructive discharge is legally regarded as a firing rather than a resignation." *Id.* (internal quotation marks and citation omitted) (cleaned up). The relevant inquiry is whether the "employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Id.* at 1251. "[W]orking conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Id.* at 1247. "[A] poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge." *Id.*

Here, Plaintiff has not pled sufficient facts demonstrating working conditions that are "unusually aggravated" or that amount to "a continuous pattern," nor has Plaintiff pled facts showing that Amazon "intentionally created or knowingly permitted" such conditions. *See* FAC ¶¶ 60–66. Plaintiff appears to allege that the denial of his request for personal leave and potentially returning to work under the "disputed PIP," or otherwise risking classification as "inactive" and facing discipline for not complying with the PIP, creates a situation that may lead to a constructive discharge. *Id.* ¶ 65. However, Plaintiff continues to be employed by Amazon, and "a poor performance rating or a demotion does not by itself trigger a constructive discharge." *Turner*, 7 Cal. 4th at 1247; *see also* Mot. at 6. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's

---

[2] The Court considers Plaintiff's claim for retaliation in connection with Plaintiff's Fifth Cause of Action, which also alleges violations of California Labor Code § 6310. *See* FAC at 24.

25-CV-1841 JLS (AHG)

Third Cause of Action.

**IV.    Defamation**

Defendants next argue that Plaintiff's claim for defamation over his manager's statement, at the time of issuing the PIP, that he "failed to demonstrate ownership" by declining to deliver an internal presentation fails because "Plaintiff's dissatisfaction with his performance feedback does not imbue that feedback as defamatory."  Mot. at 7. Plaintiff responds that this statement constitutes defamation because it "impl[ies] a false defamatory fact"—that he "refused out of neglect/incompetence rather than a protected legal pause."  Opp'n at 9.

The Court agrees with Defendants that Plaintiff fails to state a claim for defamation. "Defamation is 'the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.'"  *3D Sys., Inc. v. Wynne*, No. 21-CV-01141-AGS-DDL, 2024 WL 1099677, at *8 (S.D. Cal. Mar. 12, 2024) (quoting *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021)). "It is an essential element of defamation that the publication be of a false statement of fact rather than opinion."  *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1083 (S.D. Cal. 2017) (quoting *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1181 (2000)).  In distinguishing between fact and opinion, a court considers the totality of circumstances, "put[ting] itself in the place of an average reader and decid[ing] the natural and probable effect of the statement, and look[ing] at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed."  *Ola v. Galaxee.solutions LLC*, No. 24-CV-00345-JWH-DFM, 2024 WL 6907187, at *3 (C.D. Cal. Sept. 3, 2024), *reconsideration denied*, No. 24-CV-00345-JWH-DFM, 2025 WL 3236208 (C.D. Cal. Feb. 18, 2025) (internal quotation marks and citation omitted).

Considering the totality of circumstances, the Court finds the statement that Plaintiff "failed to demonstrate ownership" is a statement of opinion—not fact—regarding Plaintiff's job performance.  *See Ola*, 2024 WL 6907187, at *4 (finding that statements

25-CV-1841 JLS (AHG)

about plaintiff's job performance in PIP were "purely opinion"); *Gilinsky v. DLC An Addison Grp. Co.*, No. CV 24-04407 RAO, 2025 WL 1088080, at \*11 (C.D. Cal. Mar. 10, 2025) (finding the statement that plaintiff was "not a team player" was an opinion that could not be "proven true or false"). "Generally, performance evaluations are statements of opinion." *Reese v. Barton Healthcare Sys.*, 606 F. Supp. 2d 1254, 1263 (E.D. Cal. 2008) (citation omitted). Absent additional facts suggesting otherwise, the Court finds that Plaintiff's manager's statement in connection with his PIP is no different. *See Kim v. Yoon*, No. 21-CV-04454-SVK, 2021 WL 4442664, at \*3 (N.D. Cal. Sept. 28, 2021) (A defamation claim "cannot be based on performance reviews except in limited circumstances, such as where they include accusations of criminal conduct, lack of integrity, dishonesty, incompetence, or reprehensible personal characteristics or behavior." (internal quotation marks and citation omitted)); *see also Rudwall v. Blackrock, Inc.*, No. C06-2992 MHP, 2006 WL 3462792, at \*5 (N.D. Cal. Nov. 30, 2006), *aff'd*, 289 F. App'x 240 (9th Cir. 2008) ("California law makes it clear that, except in egregious circumstances not present here, the courts are not the proper venue for an employee to challenge his employment evaluation."). Plaintiff's allegations therefore do not rise to the level of defamation. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Fourth Cause of Action.

## V.    Retaliation

As to Plaintiff's fifth and final claim for retaliation under California Labor Code §§ 1102.5(b), 1102.5(c), 6310, and 923, Defendants argue that Plaintiff fails to establish that he engaged in a protected activity or that Defendants took any adverse action. Mot. at 7–8. Specifically, Defendants argue that "discussing one's personal accommodations with one's employer" is not protected activity and that Plaintiff "fails to identify any statutes that conflicted with his coaching plan." *Id.* at 8–9. Defendants further assert that the issuance of a PIP does not constitute adverse employment action. *Id.* at 10. Plaintiff responds that his disclosures regarding "ADA/FEHA noncompliance" and his refusal to proceed under the coaching plan and PIP "while the ADA interactive process and a

physician-mandated six-hour schedule were ignored" constitute protected activity and that the subsequent issuance of the PIP amounted to adverse employment action. Opp'n at 12–13.

Beginning with California Labor Code §§ 1102.5(b), 1102.5(c), and 6310, the Court finds that Plaintiff fails to state a claim for retaliation. Labor Code § 1102.5(b) provides in part that an employer "shall not retaliate against an employee for disclosing information . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Cal. Lab. Code § 1102.5(b). Labor Code § 1102.5(c) further provides that an employer "shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." § 1102.5(c). Similarly, Labor Code § 6310 limits an employer's ability to "discharge[], threaten[] with discharge, demote[], suspend[], or in any other manner discriminate[] against" an employee "because the employee has made a bona fide oral or written complaint" concerning "unsafe working conditions, or work practices, in their employment or place of employment . . . ." § 6310(b).

To state a claim for retaliation under any of these provisions, Plaintiff must show that (1) he "engaged in a protected activity," (2) Defendants then subjected Plaintiff to "adverse employment action," and (3) there was a "causal connection between the two." *Sustrick v. CI Cap. Partners LLC*, No. 24-CV-06463-SK, 2025 WL 162617, at *2 (N.D. Cal. May 5, 2025), *appeal dismissed*, No. 25-3568, 2025 WL 2542182 (9th Cir. July 22, 2025) (internal quotation marks and citation omitted) (explaining requirements for a retaliation claim under § 1102.5(b)); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012) (same under § 1102.5(c)); *Khraibut v. Chahal*, No. 15-CV-04463-CRB, 2021 WL 1164940, at *9 (N.D. Cal. Mar. 26, 2021) (same under § 6310).

/ / /

25-CV-1841 JLS (AHG)

The Court first considers whether Plaintiff engaged in a protected activity and concludes that Plaintiff did not. Under § 1102.5(b), "protected activity is the disclosure of or opposition to a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *La v. San Mateo Cnty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224, at *4 (N.D. Cal. Sept. 16, 2014) (quoting *Edgerly v. City of Oakland,* 211 Cal. App. 4th 1191, 1199 (2012)) (cleaned up). Section 1102.5(b) protects whistleblowing employees "who report their concerns to public agencies," not "employees who only report their suspicions directly to their own employer." *Federico v. Overland Contracting, Inc.*, No. C 12-2588 MEJ, 2013 WL 5516187, at *18 (N.D. Cal. Oct. 4, 2013) (citing *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 76–77 (1998)). "[T]he majority of courts require plaintiffs . . . to allege the specific rule, regulation[,] or statute they reasonably believed had been violated, and the factual basis for their reasonable belief." *Id.* at *5; *see also De Souza v. Dawson Tech., Inc.*, No. 21-CV-1103 JLS (MSB), 2022 WL 298368, at *5 (S.D. Cal. Feb. 1, 2022) (noting that a majority of courts require plaintiffs to allege a specific rule, regulation, or statute to bring a claim under § 1102.5(b)) (collecting cases); *Pham v. Talkdesk, Inc.*, No. 22-CV-05325-MCS-JPR, 2022 WL 18584764 (C.D. Cal. Nov. 14, 2022) (same) (collecting cases).

Here, Plaintiff emailed HR and his manager on multiple occasions between June and August 2024, stating that he believed changes to his employment were needed to "ensure compliance with legal precedents and regulations," FAC ¶ 30, that he had not received "the required analysis of the job's purpose and essential functions" in connection with his requested accommodations, *id.* ¶ 31, and that he believed the coaching plan violated "federal and state statutes and regulations," *id.* ¶ 33. Plaintiff's allegations that Defendants violated "federal and state statutes and regulations," without identifying a particular statute or regulation, fall short of what is required by most courts to state a claim for retaliation under § 1102.5(b). *See San Mateo Cnty. Transit Dist.*, 2014 WL 4632224, at *4. And, importantly, Plaintiff's concerns that Defendants violated "federal and state statutes and regulations" were communicated to HR and his manager—not disclosed to a public agency.

*See Weingand v. Harland Fin. Sols., Inc.*, No. C-11-3109 EMC, 2012 WL 3537035, at \*4 (N.D. Cal. Aug. 14, 2012) ("Plaintiff cannot make out a § 1102.5 claim because he does not allege that he reported any suspicions of unlawful activity to any government agency, nor does he allege that he refused to do anything that would violate the law.  Rather, he merely asserts that he complained about Defendant's practices and questioned whether they were legal to his own human resources department. Such a complaint does not raise whistleblower protection under § 1102.5.").  Therefore, Plaintiff fails to establish he engaged in a protected activity under § 1102.5(b).

The Court reaches the same conclusion under § 1102.5(c).  A protected activity under § 1102.5(c) includes "refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."  § 1102.5(c).  "For an employee's refusal to be protected under this provision, 'the employer must be on notice that the employee's reason for refusing to participate in the conduct is that the conduct violates a state or federal statute, rule, or regulation.'"  *Singh v. IKEA Distrib. Servs., Inc.*, No. 20-CV-975 NONE JLT, 2021 WL 1907608, at \*5 (E.D. Cal. May 12, 2021), *report and recommendation adopted*, No. 20-CV-975 NONE JLT, 2021 WL 6775890 (E.D. Cal. June 16, 2021) (quoting *Ferretti v. Pfizer Inc.*, 2013 WL 140088, at \*8 (N.D. Cal. Jan. 10, 2013)).

Plaintiff does not allege that his participation in the coaching plan would result in the violation of a statute, rule, or regulation.  *See generally* FAC.  Instead, as Defendants point out, Mot. at 9, Plaintiff believes the coaching plan itself violates "federal and state statutes and regulations," FAC ¶ 33.  As allegations of this kind are not covered by 1102.5(c), Plaintiff fails to establish he engaged in a protected activity.  *See Singh*, 2021 WL 1907608, at \*5 ("A plaintiff is unable to establish a claim under Section 1102.5(c) when the claim is predicated on an allegation that the plaintiff was a victim of an employer's unlawful labor practices.") (collecting cases); *Weingand*, 2012 WL 3537035, at \*5 ("[T]he language of subsection (c) traditionally applies to employees who take or refuse to take action which facilitates an employer's violation of the law.") (collecting

25-CV-1841 JLS (AHG)

cases); *Navarro v. DHL Glob. Forwarding*, No. 15-CV-5510-CAS (Ex), 2017 WL 901880, at *11 n.11 (C.D. Cal. Mar. 6, 2017) ("Where an employee is the victim of an unlawful labor practice, they cannot be said to have 'participated' in the practice." (cleaned up) (citation omitted)).

Although Labor Code § 6310 offers generally broader protections for whistleblowing employees than §§ 1102.5(b) and 1102.5(c), *see Weingand*, 2012 WL 3537035, at *4, Plaintiff also fails to establish he engaged in protected activity under this provision. Section 6310 protects employees from retaliation for reporting working conditions they believe to be unsafe. *Ferretti*, 855 F. Supp. 2d at 1028 (citation omitted). Here, however, Plaintiff did not make complaints about unsafe working conditions. *See generally* FAC. Instead, his complaints to HR and his manager were focused on his belief that he had not received "the required analysis of the job's purpose and essential functions" with respect to his requested accommodations and that the coaching plan violated "federal and state statutes and regulations." FAC ¶¶ 31, 33.

The closest Plaintiff comes to alleging a protected activity under § 6310 is his complaint that "the process . . . established by Amazon did not allow [him] to evaluate the proper accommodation required for [his] health and safety adequately, and that changes were needed to ensure compliance with legal precedents and regulations." FAC ¶ 30 (internal quotation marks omitted). Plaintiff's email may indirectly relate his "health and safety," but fails to identify specific unsafe working conditions or the reasons why he believed they were unsafe. *Cf. Khraibut*, 2021 WL 1164940, at *9 (finding protected activity under § 6310 where plaintiff repeatedly complained of safety concerns relating to employer's "pervasive drug and alcohol abuse," pressing of other employees to "take illicit drugs," and "verbally threatening . . . physical safety"); *Cuevas v. SkyWest Airlines*, 17 F. Supp. 3d 956, 964 (N.D. Cal. 2014), *aff'd sub nom.*, 644 F. App'x 791 (9th Cir. 2016) (finding protected activity under § 6310 where plaintiff made several formal safety complaints to employer); *Rodriguez v. Lab'y Corp. of Am.*, 623 F. Supp. 3d 1047, 1056 (C.D. Cal. 2022) (finding protected activity under § 6310 where plaintiff made multiple

25-CV-1841 JLS (AHG)

complaints "related to overfilled biohazard bags, disinfection logs, and [defendant's] COVID-19 protocol"). Plaintiff therefore fails to state a claim under § 6310. As Plaintiff's claims under Labor Code §§ 1102.5(b), 1102.5(c), and 6310 fail at the first step, the Court need not determine whether the adverse employment action and causation requirements are met.

Finally, Labor Code § 923 provides for the right of workers in California to "effectively vindicate their fundamental rights to full freedom of association, self-organization, and designation of representatives of their own choosing, free from retaliation or intimidation by their employer." § 923. Although § 923 is a declaration of public policy, "[v]iolations of statute embodying public policy are actionable even though a specific remedy is not provided in statute and any injured member of the public for whose benefit the statute was enacted may bring an action." *San Diego Police Officers' Ass'n v. Aguirre*, No. 05-CV-1581 H (POR), 2005 WL 3180000, at *13 (S.D. Cal. Nov. 5, 2005) (citations omitted). Typically, § 923 functions "as a basis for a wrongful termination claim in violation of public policy." *Caldwell v. OS Rest. Servs., LLC*, No. ED CV 19-754-DMG (MRWx), 2021 WL 3264306, at *8 (C.D. Cal. May 13, 2021) (citing *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1047 (9th Cir. 2017)).

Defendants argue that Plaintiff fails to allege facts to support his contention that Amazon impeded his right to designate representation to negotiate the terms and conditions of his employment. Mot. at 9. Defendants further argue that § 923 does not "insulate[] employees from directly receiving performance feedback or suggest[] that counsel designation prohibits such feedback from being issued." *Id.* Plaintiff responds that he properly invoked his right to designate counsel under § 923, and Defendants "bypassed counsel" by subsequently issuing a PIP. Opp'n at 13.

Defendants' conduct was not contrary to the policy set forth under § 923. Plaintiff alleges that he "invok[ed] his statutory rights to representation for the purpose of negotiating the terms and conditions of employment," FAC ¶ 31; however, Plaintiff does not allege facts demonstrating that the subsequent issuance of the PIP somehow impeded

25-CV-1841 JLS (AHG)

his right to designate representation. *See generally id.* Nor was Plaintiff's employment terminated. *See generally id.*; *Caldwell*, 2021 WL 3264306, at *8. The Court thus concludes that Plaintiff fails to allege a public policy violation pursuant to § 923. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Fifth Cause of Action.

## VI.   Improper Addition of Defendants

Finally, Defendants argue that Amazon.com, Inc. and Amazon.com Services LLC are improperly named as defendants since Plaintiff fails to plead that they were his employers and should thus be dismissed from this action. Mot. at 11. Here, Plaintiff alleges that "Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. are affiliated entities and jointly participate in the employment, compensation, and administration of restricted stock unit awards that give rise to the causes of action alleged herein." FAC ¶ 18; *see* Opp'n at 14–15. Plaintiff also asserts that his "payroll records list Amazon.com Services LLC as employer of record" and that the "RSU Award Agreement is between Amazon.com, Inc. and Plaintiff." Opp'n at 15. At this stage, this alleged factual connection is sufficient to name Amazon.com, Inc. and Amazon.com Services LLC as defendants. *See Ashcroft*, 556 U.S at 678. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to their request to dismiss Amazon.com, Inc. and Amazon.com Services LLC from this action.

**CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 14) and **DISMISSES** Plaintiff's First Amended Complaint (ECF No. 10) **WITH LEAVE TO AMEND**. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (noting that the general policy provided by Rule 15(a)(2) that the court should freely give leave "when justice so requires" is "to be applied with extreme liberality").

Within twenty-one (21) days of this Order, Plaintiff either (1) **SHALL FILE** an amended complaint, or (2) **SHALL INDICATE** to the Court that he will not do so.

*Failure to timely select either of the above options may result in the dismissal of all claims for failure to comply with a court order pursuant to Federal Rule of Civil Procedure 41(b).* *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890–91 (9th Cir. 2019) (explaining courts may dismiss an action under Rule 41(b) when a plaintiff fails to comply with a court order requiring the filing of an amended complaint). Any amended complaint must be complete in and of itself without reference to Plaintiff's First Amended Complaint; claims not realleged in the amended complaint will be considered waived. *See* S.D. Cal. Civ LR 15.1; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived").

**IT IS SO ORDERED.**

Dated:  March 19, 2026

Hon. Janis L. Sammartino
United States District Judge

25-CV-1841 JLS (AHG)